UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DUSTIN BEASLEY, <br><br> Plaintiff, <br><br> VERSUS <br><br> ROWAN COMPANIES, INC., <br><br> Defendant. | 18-CV-00365 <br><br><br> JUDGE JAY C. ZAINEY <br><br> MAGISTRATE JUDGE <br> JANIS VAN MEERVELD |

## ORDER AND REASONS

Before the Court is the Second Motion to Compel filed by the plaintiff. (Rec. Doc. 24). Oral argument was held on April 3, 2019. As to Interrogatory 13, the court ordered Mr. Beasley to serve a new interrogatory to clarify what information he still sought. With regard to the purportedly privileged investigation materials the court took the motion under submission and ordered defendant Rowan Companies, Inc. ("Rowan") to produce the documents for *in camera* review. For the following reasons, the Motion to Compel is GRANTED.

Background

This is a Jones Act and General Maritime Law case. Plaintiff Dustin Beasley alleges that on January 13, 2015, he was employed as a seaman by defendant Rowan Companies, Inc. ("Rowan") and working on the EXL III, a drilling vessel owned, operated and/or controlled by Rowan. Beasley alleges that defendant McMoRan Oil & Gas, LLC (hereinafter "McMoRan") had contracted with Rowan to operate the EXL III rig and conduct mineral exploration activities. He alleges that on January 13, 2015, the drilling crew was using Frank's Power Tongs to break pipe. When the Power Tongs could not break apart a section of pipe, Beasley alleges that the lead driller decided to use the iron roughneck system aboard the EXL III without stopping to perform the

1

required job safety analysis. Beasley alleges that he was instructed to put his hand and foot on the drill pipe to move it in place, and when the order was given to close the bottom jaws, the spinner hawk of the iron roughneck system above it activated, causing the dies to close suddenly, crushing Beasley's hand against the pipe. Beasley has filed this lawsuit alleging that Rowan's negligence, the unseaworthiness of the EXL III, and the negligence of McMoRan are responsible for his injuries.

Trial in this matter is set to begin on June 10, 2019. The deadline to complete discovery is April 23, 2019. The issue before the court at this time is whether Rowan is properly withholding as privileged two internal investigation documents. One is described as "Draft of Internal Incident Investigation Report." Beasley has actually obtained a copy of this document through a third-party subpoena. Rowan thus insists the issue is moot as to this document, but Beasley maintains that he is entitled to any attachments to the report. At oral argument, Rowan confirmed that all referenced attachments have already been produced to Beasley, except for the interview notes. The second document is described as "Internal Investigation (IRA)-IRA- 082-150001." Rowan insists both documents were prepared in anticipation of litigation and that they are protected by the work-product doctrine. Beasley argues that the documents were prepared in the ordinary course of business for the primary purpose of safety and regulatory compliance purposes.

Law and Analysis

1. *Work Product Doctrine*

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to

materials prepared by the party itself and representatives other than attorneys. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Campos, 20 F.3d 1171 (5th Cir. 1994) (quoting Nobles, 422 U.S. at 238) (alteration omitted). Thus, although a party may be ordered to produce work-product if the seeking party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. Proc. 26(b)(3)(A)-(B). Such materials are known as "opinion work product."

The work product "privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)). "[M]aterials assembled in the ordinary course of business," are excluded from work-product materials. El Paso, 682 F.2d at 542.

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted). "[T]he burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect the documents from discovery." Id.

3

For example, in Transocean Deepwater, Inc. v. Ingersoll-Rand Co., the plaintiff sought to discover a draft root cause analysis report prepared following an accident aboard a vessel resulting in injury to the plaintiff's foot with the amputation of three toes. No. CIV.A. 08-4448, 2010 WL 5374744, at *1 (E.D. La. Dec. 21, 2010). The company's outside counsel and an outside claims manager accompanied company representatives during the post-accident investigation, and the company contended that counsel and the claims manager only attend investigations when litigation is anticipated. Id. The court found that counsel had participated in and guided all activities of the company representatives, had expressed opinions as to the content of the report, and had reviewed the draft report and made hand written revisions to it. Id. The court held that the work product doctrine protected the report. Id. at *3. The court recognized that "the work-product doctrine does not protect all Root Cause Analysis Reports as many are created in the ordinary course of business," but found that because the report at issue was created following a severe injury that rendered litigation imminent and because counsel had participated in the investigation and the drafting of the report, the report was not discoverable. Id.

In contrast, in Piatkowski, the defendant sought to protect from disclosure certain witness statements taken after the accident and after the lawsuit was filed. 2000 WL 1145825, at *2. The statements had been taken by a company retained by the defendant to investigate the plaintiff's accident. Id. at *3. There was no evidence showing whether the claims investigator was routinely hired to investigate on scene accidents. Id. The court deduced that the investigating company "provides services similar to that of an insurance company; it adjusts claims and resolves disputes short of litigation." Id. The court explained that "courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." Id. at *2. The court concluded that the defendant had failed to demonstrate

4

that "the primary motivating purpose in securing the witness statements was in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resolvable claim." Id.; see Nolan v. Omega Protein, Inc., No. CV 17-2835, 2017 WL 4960272, at *4 (E.D. La. Nov. 1, 2017) (ordering production of statements of two employee witnesses to the incident where the adjuster was typically retained at the end of every fishing season to conduct witness interviews for any accidents, where outside counsel had not been retained at the time of the interviews, and where there was no evidence that in-house counsel was involved, even though there was evidence that plaintiff had obtained extensive treatment for his injuries by the time the interviews were conducted).

2. *Internal Investigation Form -IRA-082-150001*

Both privilege log entries at issue here are investigation reports arising out of the same investigation. One is described as "Internal Investigation Form -IRA-082-150001" ("IRA Report"). According to Rowan's privilege log, an investigation into the incident was commenced on January 14, 2015, by Austin Helms and Laura Van Metre, Health, Safety & Environmental ("HSE") personnel at the direction of Curtis Dandridge, the rig's Offshore Installation Manager ("OIM"). The privilege log notes that "[s]tandard procedure was to submit the report to Rowan's Counsel, who was David Farr at the time." In opposition, and without a supporting affidavit or certification, Rowan explains that the report was drafted "with review and input from David Faure, Rowan's Assistant General Counsel at the time." (Rec. Doc. 30, at 5). Following oral argument, Rowan produced an affidavit in which Rowan's current Senior Counsel, Mark Holleman, attests that he was not employed by Rowan at the time of the incident or investigation, but that it was standard procedure at the time of the incident for associate general counsel David Faure "to review and provide input in anticipation of litigation on investigations like this one."

5

Rowan argues that the two reports listed on the privilege log are protected because counsel was involved in the preparation of the documents due to the severity of the injury, from which Rowan anticipated litigation would be imminent. It says that although the documents may also have been created for other purposes, the main purpose was to evaluate Rowan's involvement and potential exposure as a result of the incident. Thus, it insists, the documents are protected from discovery as work product. Further, Rowan argues that the exception to the work product doctrine is not applicable here. It argues that Beasley cannot show a need for the documents because he has been given "all photographs taken in connection with the incident," "the identity of all witnesses interviewed with respect to the investigation," and "all documents bearing on the facts underlying the investigation, with the exception of notes taken by the investigatory team during the interviews." It also argues that the reports contain mental impressions and opinions of the investigatory team and Rowan's counsel. Finally, Rowan adds that the documents will not be admissible in this action because they constitute subsequent remedial measures. See Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction.").

Beasley counters that the reports are not protected by the work product doctrine because they were created for safety and regulatory compliance reasons, not in anticipation of litigation. He submits that the reports were created pursuant to Rowan's standard safety procedures. Section 2.14 of Rowan's Employee Safe Practices Handbook provides that:

> Rowan Rig Superintendent/OIM are required to formally investigate and should conduct a post accident remedial action investigation. When requested, remedial action maybe required for: any accidents resulting in a recordable injury . . . any

6

"near miss" or minor incident, which has the potential to result in a serious injury, oil spill, property loss, or fire . . . ."

(Rec. Doc. 24-5). The reports here were, per Rowan's privilege log, ordered by OIM Dandridge and the authors are listed as two HSE employees. Beasley argues that the policy indicates the reports are prepared in the ordinary course of business. Beasley argues that in light of the purpose of the documents, the fact that Rowan sent them to in house counsel does not make them work product. Beasley adds that Rowan's counsel did not order or write the reports. Finally, Beasley argues that the reports are not protected because the investigation that generated the reports was into underlying facts that are relevant to this litigation. These underlying facts, he insists, are not protected by the work product doctrine.

The Court has now reviewed the IRA Report *in camera* and finds that it is not protected by the work-product doctrine. It is clear that the IRA Report is focused on safety and not preparation for litigation. The document contains a list of corrective and preventative actions, and it contains no references to litigation. In the "Investigation Team" section, it lists only Mr. Helms, an HSE employee and not an attorney. The privilege log notes only that is was standard operating procedure to submit the report to Rowan's counsel, not that counsel ordered, requested it, or was involved in conducting the investigation or preparing the report. The affidavit of Rowan's current counsel, Mr. Holleman, offers little more. Mr. Holleman blandly attests that it was standard operating procedure for in house counsel to provide input in anticipation of litigation on investigations like this one. Counsel's involvement in the investigation and preparation of the report remains speculative. Moreover, the IRA Report itself offers no indication that counsel was involved in creating it. There are no mental impressions or other legal analysis. The document is generically investigative; it does not indicate that it is used for serious accidents where litigation is anticipated. In fact, in the "Incident Severity" section, the incident is identified as "medium."

7

Further, there are numerous blanks on the form, which is inconsistent with the investigation being triggered by a serious accident resulting in a concern about litigation. The Court finds that the investigation and reporting circumstances present here are far closer to those in Piatkowski, supra, than they are to Transocean Deepwater, supra. The facts here strongly suggest that the investigation and the IRA Report were conducted and prepared in the ordinary course of business, and not primarily in anticipation of litigation. Accordingly, the IRA Report is not protected by the work product doctrine and must be produced to Beasley.

3. *Draft of Internal Investigation Report*

The other document at issue is described on the privilege log as a "Draft of Internal Incident Investigation Report" ("Draft Report"). Just like the IRA Report discussed above, the privilege log describes an investigation commenced on January 14, 2015. The authors of the document are Helms and Van Metre (both HSE personnel) at the direction of Dandridge (the OIM). As with the IRA report, the privilege log notes that "[s]tandard procedure was to submit the report to Rowan's Counsel, who was David Farr at the time."

There is no dispute that Beasley has obtained[1] a copy of the Draft Report from a non-party to which Beasley issued a subpoena, Rowan's customer National Oilwell Varco ("NOV"). Beasley is seeking the attachments to the Draft Report. The last page of the Draft Report is its Appendix 3, which is titled "Investigation Supporting Evidence (Not attached − Separate File in IRA-082-150001 of EHS Insight)." It lists the following documents: additional pictures, interviews, corresponding RSOP, pre-tour meeting safety meeting forms, preventative maintenance records for the Iron Roughneck. Rowan confirmed at oral argument that except for the "interviews," the documents have already been produced to Beasley. As for the interviews, Rowan explained at oral

---

[1] Rowan confirmed at oral argument that it is not seeking to claw back the Draft Report.

argument that there are no recordings of interviews, only interview notes. Rowan argued that the interview notes are privileged because the entire Draft Report is protected by the work-product doctrine and because the interview notes contain mental impressions of the interviewer. Beasley agreed at oral argument that any mental impressions contained in the interview notes could be redacted. But, he argued that the interview notes must be produced because they record contemporaneous impressions of what happened on the floor of the rig leading up to and after Beasley's injury. Beasley insists that such information is irreplaceable, especially since the accident happened over four years ago, some witnesses no longer work for Rowan, and not all of them have yet been found.

For the same reasons as discussed above, the Court finds the investigation during which the interview notes were prepared is not protected by the work-product doctrine. Rowan has not established that the interviews were taken by counsel or at counsel's direction. Rowan has not shown that the interviews were anything but part of the ordinary course of business investigation conducted pursuant to Section 2.14 of the Handbook. Moreover, the Court agrees with Beasley that the interview notes are an important contemporaneous recording of what happened on the date of the accident, which occurred over four years ago. Further, having reviewed the notes *in camera*, the Court finds they do not contain any mental impressions of the interviewer. The notes are not transcribed statements but instead they appear to jot down the employees' explanation of what happened and responses to questions. The court is not convinced the interview notes were prepared in anticipation of litigation. Accordingly, the interview notes are discoverable and must be produced.

## Conclusion

For the foregoing reasons, the Motion to Compel is GRANTED. In light of the Rule 30(b)(6) deposition of Rowan on April 18, 2019, the IRA Report and the interview notes shall be produced to Beasley by close of business on April 17, 2019.

New Orleans, Louisiana, this 17th day of April, 2019.

                                            Janis van Meerveld
                                      United States Magistrate Judge